[Civ. No. 9246.   Third Dist.   Sept. 27, 1957.]

CLYDE WILSON et al., Appellants, v. BOARD OF SUPER-
VISORS OF PLACER COUNTY, Respondent.

102

Chamberlain & Chamberlain for Appellants.

Al. B. Broyer, District Attorney, for Respondent.

Harold Raines, John B. Reilley, Frank E. Howard, David S. Kaplan and McDonough & Wahrhaftig, as Amici Curiae on behalf of Respondent.

SCHOTTKY, J.—On July 2, 1956, a petition was filed with the Board of Supervisors of Placer County for the purpose of forming the Rocklin-Loomis Municipal Utility District. This action was taken pursuant to section 11561 et seq. of the Public Utilities Code, commonly referred to as the Municipal Utility District Act. The petition was signed by 289 registered voters. The area described in the petition consists of the city of Rocklin, the Loomis Sanitary District, and several thousand acres of unincorporated territory extending from the southerly boundary of the Loomis Sanitary District to the easterly boundary of the city and also northeasterly to and along the westerly boundary of the Loomis Sanitary District to its northernmost point. With the exception of one small parcel, all of the unincorporated territory is contiguous. The boundaries of the proposed district were approved by the boundary commission. The clerk of the board of supervisors filed with the board a certificate as to the sufficiency of the signatures on the petition. On July 9, 1956, 105 property owners in the territory proposed to be incorporated as the Rocklin-Loomis Municipal Utility District filed a petition

requesting an opportunity to be heard on the matter of the boundaries. This request was denied. The board of supervisors then divided the proposed district into five wards and ordered an election held. The location of the wards is shown by the diagram.†

The number of qualified electors varied from 267 voters in Ward 2 to 184 in Ward 5. The election was held. The result was that 621 persons voted in favor of the formation of the district and 219 voted against it. In the unincorporated area 190 favorable ballots were cast and 150 no votes were cast. In Ward 5, consisting of unincorporated territory, 79 no votes and 54 yes votes were cast. Thereafter, 108 qualified electors residing in Ward 5 requested the board of supervisors to decline to declare the proposed district formed insofar as Ward 5 was concerned because the majority of voters in that ward voted against the proposition. This request was denied, and on September 24, 1956, the board of supervisors declared the district formed. Thereafter a petition for a writ of certiorari or, in the alternative, for a writ of mandamus was filed in the name of a group of landowners residing within the newly formed district, seeking to declare the district void. Following a hearing the court denied the petition and this appeal is from the judgment in said proceeding.

The principal contention of appellants is that the statute under which the Rocklin-Loomis Municipal Utility District was formed is an unconstitutional delegation of legislative authority. Appellants raised a number of other objections in the trial court, and have mentioned them in their briefs but have not argued them. However, before discussing the principal contentions of appellants we shall briefly discuss these objections.

■ The first of these objections was that the certificate of the clerk that the petition for the formation of the proposed district signed by 289 registered voters which was more than 10 per cent of the votes cast in said precincts at the next prior general election was insufficient because the clerk did not certify that any one of the registered voters signing the petition was a registered voter in the area proposed to be within the exterior boundaries of the proposed district. The clerk certified the number of votes cast in the general election next prior to the presentation of the petition in seven voting precincts and certified that these precincts comprise all or a

---

† See following pages.

~ LEGEND ~

boundary of combined district
deleted Area
tion Line
undaries of existing district
tional Area
le 1" 1000'

WARDS

1 & 2  City of Rocklin
S 4    Loomis Sanitary Dist.
3,4,5  Adjacent Area

portion of the proposed district and that the petition for formation was signed by 289 registered voters. Section 11614 of the Public Utilities Code requires that the clerk of the board of supervisors of the county in which the petition is presented shall compare the signatures to the petition and shall certify to their sufficiency or insufficiency. Section 11611 of the Public Utilities Code states that a petition signed by voters equal to 10 per cent of the total vote cast within the proposed district may be presented to the board of supervisors. The clerk certified that the petition "was signed by 289 registered voters," and obviously this was intended to mean registered voters within the area of the proposed district as no other signatures could be considered by the clerk. No contention was made in the trial court that the petition was not signed by the requisite number of registered voters, and while the certificate of the clerk could have been more explicit we think it was clearly sufficient.

■ Appellants contended also before the trial court that the board of supervisors failed to meet the requirements of section 11642 of the Public Utilities Code that the boundaries of each ward contain approximately an equal number of voters as nearly as may be. The number of registered voters in each ward varied from 267 in Ward 2 to 184 in Ward 5. We do not believe the variation in the number of electors would affect the validity of the election. The statute calls for approximately an equal number of voters in each ward. Perhaps under the geographical circumstances this was the best that could be done, but even if this court were to say that the ward lines were not properly drawn, we do not think any substantial rights of any person were affected thereby. (Pub. Util. Code, § 11701.)

Appellants contended also before the trial court that the board of supervisors could not have declared the district formed because the voters of Ward 5 voted against formation of the district, and, therefore, the election failed. Appellants argue the board of supervisors were required to eliminate the territory composing Ward 5 from the district. Section 11652 of the Public Utilities Code provides:

"The board of supervisors shall canvass the returns of each public agency and each parcel of unincorporated territory, if any, separately, and shall order and declare the district created and established of the public agencies and territory in which a majority of those who voted on the proposition voted in favor of the creation of the district if the total of

voters in such approving agencies and territory is not less than two-thirds of the number of voters within the district as first proposed, according to the register used at the election.''

Ward 5 and Ward 3 were composed entirely of unincorporated territory. Ward 4 consisted of the Loomis Sanitary District and unincorporated territory. Wards 3, 4 and 5 form a contiguous piece of land. Ward 3 is south and east of Ward 5 and is contiguous to Ward 5 on its northwest boundary. Ward 4 is north and east of Ward 3. The westerly boundary of the Loomis Sanitary District is contiguous to part of Ward 5. The remaining area of Ward 4 to the south and to the north of the Loomis District is also contiguous to Ward 5. On a map Wards 3, 4 and 5 would appear as one irregularly shaped parcel of land with the Sanitary District an island between Wards 4 and 5. ▇ Section 11652 contemplates that when the board of supervisors canvasses the vote each parcel of unincorporated territory which may be said to be one shall be canvassed separately, and not necessarily each ward, to determine if the majority of the voters have approved the proposition. That was done here and the mere fact that the voters in Ward 5 disapproved the proposition becomes immaterial when the majority of the voters in the unincorporated territory which in this case may be said to be one parcel did approve it. We conclude that the board of supervisors properly declared the district formed to include the territory within Ward 5.

The major contention of appellants, and in fact the only contention argued by them in their briefs, is that the statutes of the Public Utilities Code providing for the formation of a municipal utility district are void as an illegal delegation of the legislative power because they permit the property owners within the proposed district to determine the boundaries of the proposed district. The formation of a municipal utility district may be initiated either by a resolution of certain legislative bodies (Pub. Util. Code, § 11581), or by a petition (Pub. Util. Code, § 11611). In either case, the boundaries as proposed are those upon which the electorate votes. In either case, the board of supervisors of the county is required to call an election. Appellants contend that these provisions violate article XI, section 13, of the Constitution of the State of California, which provides:

''The Legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any

way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever, except that the Legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this State.''

It is appellants' contention that to allow the proponents of a municipal utility district to establish the boundaries in their petition is the delegation of a legislative function to private individuals. In *People* v. *Town of Ontario*, 148 Cal. 625 [84 P. 205], which was an action to determine the validity of certain proceedings whereby the Town of Ontario annexed certain territories and in which the initiation and determination of the annexation proceedings was a petition and an election like the one here, the court said, at page 629:

''It is urged in support of the attack upon the constitutionality of this act that it delegates to private citizens of the municipality, and not to any legislative body or board recognized by the constitution, the absolute power to finally determine the boundaries of the territory proposed to be annexed. This, it is said, is a legislative power which under our constitution could only be delegated to some legislative body. We are of the opinion that there is under the provisions of our constitution no unwarranted delegation of legislative power herein, and that the act in respect to the objection made is violative of no constitutional provision. It is expressly provided by our constitution that corporations for municipal purposes shall not be created by special laws, and that 'the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population, of cities and towns.' (Art. XI, § 6.) This provision necessarily includes not only the creation of new municipal corporations, but also the matter of adding new territory to an existing corporation and the exclusion of territory embraced in such a corporation from further connection therewith. As to all these matters, the legislature is limited to the enactment of general laws, under which municipal corporations may be created, or changes made in the boundaries of those already created, as local needs may demand. From the nature of things, the legislature cannot by general laws fix the boundaries of municipal corporations. It can do no more than provide the method by which boundaries can be fixed

and the territory included therein impressed with the character of municipal territory. When it has done this, it has discharged all its legislative functions in this regard. In the absence of constitutional limitation on its power, it is authorized to adopt any method it sees fit. It has said, in effect, by the act under consideration, that with certain prescribed limitations any territory shall become annexed to and a part of any existing city or town, whenever the electors of such territory shall manifest their desire for such annexation by giving a majority vote in favor thereof, and the electors of the city or town have manifested their assent in the same way. All else in the act, including the petition of twenty per cent of the electors of the town or city, has simply to do with the orderly method of obtaining the expression of the desire of the electors of the respective localities, the town and the outside territory, and the procurement of an official record of that expression. The petition of the electors is merely an initiatory step, making it the duty of a body capable of acting in such a matter to officially submit the proposition made by the petitioners, to the electors of the interested localities. The electors of each locality alone determine whether certain described territory shall become a part of the municipal corporation. If the electors of the outside territory vote in favor of such annexation, they expressly assent to and adopt as their own the boundaries designated in the petition for the election. The question, then, would appear to be simply whether the legislature by general laws may authorize the electors of any territory to determine for themselves whether such territory shall constitute a municipal corporation, or, with the assent of the electors of an existing municipality, constitute a portion of said municipality.

"As has already been said, the principal objection to the method here adopted is the one relative to the fixing of the precise boundaries. The fixing of the boundaries of a municipality is ordinarily held to be the exercise of legislative power, but assuming it to be such in its nature, in view of the constitutional provision relative to the creation of municipal corporations, it does not follow that the legislature may not confer the power to declare the precise boundaries upon the electors of the district to be affected. The conferring of such power is not a delegation of legislative power at all, for the legislature is expressly prohibited from defining the boundaries. It fully exercised its own legislative power by the enactment of the general law in the matter. Necessarily, for the execu-

tion of such general law, the power to define the exact bound-ary-lines of each particular municipality created or enlarged after the adoption of the constitution must be by such a law placed somewhere. We find no provision in our constitution limiting the right of the legislature to place this power with any tribunal or person, except so far as such right may be limited by section 1 of article III, wherein it is provided that the powers of the government of the state of California shall be divided into three separate departments, the legislative, executive, and judicial, 'and no person charged with the exercise of powers properly belonging to one of these depart-ments shall exercise any functions appertaining to either of the others, except as in this constitution expressly directed or permitted.' Manifestly this provision has no application. And it is as clear that section 13 of article XI, which provides that 'the legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or in any way interfere with any county, city, town, or municipal improve-ment, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessment, or perform any municipal functions whatever,' has no application here. The fixing of the boundaries of the territory to be annexed is in no sense of the words a 'municipal function.' (See, generally, *Fragley* v. *Phelan*, 126 Cal. 383 [58 P. 923].) There is no constitutional provision that intimates that this power can be conferred only on some legislative body, and not upon the electors of the locality to be affected, and in the absence of such a provision the question as to whether it shall be given to the one or the other is purely one of policy, upon which the determination of the legislature is conclusive. (See *In re Madera Irr. Dist.*, 92 Cal. 296, 307, 318 [28 P. 272, 675, 27 Am. St.Rep. 106, 14 L.R.A. 755].)''

We think that the foregoing quotation from the Town of Ontario case answers appellants' contention that to permit the proponents of a municipal district the right to establish boundaries violates article XI, section 13. Like the statute under consideration in the Ontario case, when the board of supervisors receives a petition signed by the requisite number of electors within the territorial boundaries of the proposed district and describing the territorial boundaries of the dis-trict, the board must submit to the electors within the area of the proposed district the question whether such a district be formed. In the Ontario case the court expressly held that

the fixing of the boundaries was not a municipal function. If not there, it is not a municipal function here. ██ The purpose of article XI, section 13, was to emancipate municipal governments from the authority and control formerly exercised over them by the Legislature. (*In re Pfahler*, 150 Cal. 71, 87 [88 P. 270, 11 Ann.Cas. 911, 11 L.R.A.N.S. 1092].)

██ To allow the electors within a proposed district to determine whether a district be formed is not an interference with the internal operation of a municipal corporation which the provision sought to reach. Further, under no circumstance could the qualified electors of an area be held to be a special commission within the meaning of the constitutional provision. Nor can the claim be made that the electors who signed the petition for the submission of a proposed utility district constitute a special commission or perform a municipal function. Certainly they perform no act of legislation. Whatever municipal function is performed in the matter of the approval of the proposition to form a district is performed by the electorate when it is submitted to them. The petition of the voters is merely an initiatory step accomplishing no more than to compel consideration of the matter by those qualified to act and does not itself constitute the performance of a municipal function in any proper sense of the word. (*In re Pfahler, supra.*)

██ Nor does the act violate article IV, section 1, of the Constitution because it gives the petitioners the power to set forth the boundaries of the district. If the setting of boundaries is not a legislative function, then there can be no illegal delegation of power to permit others to set them. On this question of delegation we might cite Cooley's Constitutional Limitations (8th ed.). In discussing the proposition that a Legislature may not delegate legislative power, he states, at page 236:

"Nevertheless, as the corporators have a special and peculiar interest in the terms and conditions of the charter, in the powers conferred and liabilities imposed, as well as in the general question whether they shall originally be or afterwards remain incorporated at all or not, and as the burdens of municipal government must rest upon their shoulders, and especially as by becoming incorporated they are held, in law, to undertake to discharge the duties the charter imposes, it seems eminently proper that their voice should be heard on the question of their incorporation. . . . The right to refer any legislation of this character to the people peculiarly interested

does not seem to be questioned, and the reference is by no means unusual.'' (See also *In re Pfahler, supra; People* v. *McFadden,* 81 Cal. 489 [22 P. 851, 15 Am.St.Rep. 66].)

■ If the Legislature may let the electorate determine whether a municipal corporation be formed as if, as held in the town of Ontario case, the fixing of boundaries is not a legislative function, any argument as to unconstitutional delegation of legislative power falls.

In this case appellants have conceded that there are no due process objections to the formation of this type of district without a hearing as to the proposed boundaries and for that reason we have deemed it unnecessary to review the cases upholding the statutory scheme used here.

The judgment is affirmed.

Peek, Acting P. J., and Warne, J. pro tem.,\* concurred.

---

\*Assigned by Chairman of Judicial Council.